# In the United States Court of Federal Claims

|  |  |
|---|---|
| LONNIE FLEENOR, et al., | No. 21-1355 |
| *Plaintiffs,* | (Filed: August 23, 2023) |
| v. |  |
| THE UNITED STATES OF AMERICA, |  |
| *Defendant.* |  |

*Adam Riley*, Flint Law Firm, Edwardsville, IL, for Plaintiffs.

*Amanda Stoner*, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

## OPINION AND ORDER

**LERNER,** *Judge*.

Plaintiffs each own land abutting former railroad lines and bring Fifth Amendment claims under the National Trails System Act ("Trails Act"). Am. Compl., ECF No. 11. They assert that the government effected a taking of their property when it converted a railroad to a trail. *Id.* To establish a taking, Plaintiffs must first prove that they had property rights in the land at issue by demonstrating that the original landowner conveyed an easement to the Chesapeake and Ohio Railway Company ("C&O Railroad" or "the Railroad"). The parties stipulate that each Plaintiff has at least some interest in the land. Stipulations Regarding Title Matters ("First Stipulation"), ECF No. 25; Stipulations Regarding Title Matters ("Second Stipulation"), ECF No. 37. Seventeen source conveyance instruments remain in dispute.

The parties asked this Court to bifurcate proceedings and first determine property title rights and then, where applicable, assign liability and just compensation. Scheduling Order, ECF No. 10. Thus, this Opinion addresses only the parties' cross-motions for partial summary judgment on the title issues. Plaintiffs also move to strike four documents submitted as evidence.

In sum, the Court finds that one deed conveyed an easement while the rest did not. For the following reasons, Defendant's Motion for Summary Judgment is **GRANTED-IN-PART** and **DENIED-IN-PART**. Plaintiffs' Cross-Motion for Summary Judgment is **GRANTED-IN-PART** and **DENIED-IN-PART**. Additionally, Plaintiffs' Motion to Strike is **DENIED**.

I.      **Factual Background**

A.      **The Middle Creek Subdivision**

Plaintiffs each own property adjoining a stretch of land between mileposts COQ 0.0 and COQ 10.1 in Floyd County, Kentucky, known as the "Middle Creek Subdivision." Def.'s Mot. for Summ. J. ("Def.'s Mot.") Ex. C, at 18, ECF No. 44-3. Between 1941 and 1942, the Chesapeake and Ohio Railway Company acquired this land to build a railroad line. *Id.* at 80. The line served several coal mines, none of which operate today. *Id.* at 80–81. In 1987, the C&O Railroad merged into CSX Transportation ("CSXT"). *Id.* at 81.

On October 5, 2015, CSXT filed a Notice of Exemption with the Surface Transportation Board ("STB") under 49 C.F.R. § 1152.50 seeking authorization to abandon the Middle Creek Subdivision. Def.'s Mot. Ex. C. The City of Prestonburg, Kentucky (the "City") filed a request on November 2, 2015, for a Notice of Interim Trail Use ("NITU") to negotiate acquisition of the line for use as a trail. Def.'s Mot. Ex. D, ECF No. 44-4, at 2. CSXT agreed to negotiate interim trail use for the line with the City. *Id.*

On December 1, 2015, the STB issued an NITU and imposed a public use condition. Pls.' Mot. for Summ. J. ("Pls.' Mot.") at 13, ECF No. 48. The City requested several extensions of the 180-day negotiating period. *Id.* The NITU period expired on November 20, 2017. *Id.* On March 6, 2019, the City requested a second NITU. *Id.* The STB issued the new NITU on April 30, 2019, and CSXT entered into a trail use agreement with the City. *Id.* at 14.

B.      **The Disputed Source Deeds**

Between 1941 and 1942, CSXT obtained the land at issue through many source deeds. Pls.' Mot. at 15–21. These deeds originally conveyed at least partial title to various parcels of land to the C&O Railroad. *Id.*; Def.'s Mot. Ex. C, at 17. The parties stipulate that several of these deeds conveyed only easements, but numerous deeds in the Middle Creek Subdivision remain disputed. Pls.' Mot. at 15–21.

Eight Plaintiffs claim ownership over land that is at issue in this Opinion.[1] *Id.* The parties stipulate that each Plaintiff owned the parcel number and their adjacency to the railroad corridor as of April 30, 2019, the date on which the NITU was issued. Second Stipulation at 1; Stipulations Regarding Title Matters ("Third Stipulation") at 1, ECF No. 41. The Plaintiffs and their land parcels are as follows:

Plaintiff Randy Allen claims ownership over parcel 024-00-00-004.00, which is sourced from four deeds: Susie Hale, Edgar Hale, Howard N. Eavenson, and Martha Hale. Pls.' Mot. at 15–16. The parties dispute the interest in the land conveyed in the Susie Hale Deed, but agree that the other three conveyed easements. *Id.*

---

[1]    The parties stipulate that the source instrument related to Wilma L. Goble's parcel 035-00-00-085.00, Lonnie and Rita Fleenor's parcel 035-10-04-002.00, and Jenny Porter's parcel 035-10-04-001.00 conveyed easements. First Stipulation. The parties further agree that these Plaintiffs owned those parcels on the NITU's effective date. *Id.*

Plaintiffs Bill and Demetra Francis claim ownership over four parcels.[2] *Id.*  Parcels 016-00-00-031.00, 016-00-00-031.02, and 016-00-00-031.03 are referenced in the Harmison Slone Deed, Harmison Slone condemnation judgment, Allen Slone Deed, and Howard N. Eavenson Deed.  *Id.*  The parties dispute the interest in the land conveyed in the Harmison Slone Deed, Harmison Slone condemnation judgment, and Allen Slone Deed, but stipulate that the Howard N. Eavenson Deed conveyed an easement to the Railroad.  *Id.*  The Plaintiffs also claim an interest in parcel 016-00-00-031.01.  *Id.*  As it relates to this parcel, the parties dispute the following source deeds: Harmison Slone condemnation judgment, Harmison Slone Deed, Allen Slone Deed, Charles Slone Deed, and Riley Prater Deed.  *Id.*  The Howard N. Eavenson and Sallie Prater deeds are not in dispute—the parties agree these deeds conveyed easements.  *Id.*

Plaintiff BMD Enterprises, Inc. asserts ownership interest over parcel numbers 016-00-00-029.00 and 016-00-00-033.00.[3] *Id.* at 17–18.  The source deeds for the first parcel are the Harmison Slone Deed, Allen Slone Deed, Howard N. Eavenson Deed, and the Harmison Slone condemnation judgment.  *Id.*  Only the Howard N. Eavenson Deed is stipulated to and the rest are disputed.  *Id.*  The source deeds for the second parcel are the Charles Slone Deed, the Second Allen Slone Deed, the Howard N. Eavenson Deed, the Riley Prater Deed, the Sallie Prater Deed, the Susie Hale Deed, and the Edgar Hale Deed.  *Id.*

Plaintiff Myrtle Johnson claims interest in parcel numbers 016-00-00-059.00 and 016-00-00-059.02.  *Id.* at 19.  The source deeds for these two parcels are identical.  *Id.*  The parties dispute the deeds from Robie Johnson, Roxie Justice, Avanella Hale, Willard Ratliff, and Avanelle Johnson.  *Id.*  The parties stipulate that the Elk Horn Coal Corp. and Floyd Elkhorn Coal Co. Deeds convey easements.  *Id.*

Plaintiff Mildred Whitaker disputes parcel 024-00-00-018.00.[4] *Id.* at 19–20.  The parties challenge the land interest conveyed in one deed related to this parcel: the L.M. Johnson Deed.  *Id.*  They agree that the other source conveyance instruments—from Howard N. Eavenson and Beverly Whitaker—conveyed easements.  *Id.*

Plaintiff Joseph Slone claims an ownership interest in parcel 016-00-00-38.00.  *Id.* at 20–21.  The parties dispute the source deeds from Daisy Hale Howard, Oscar Slone, and Lewis Slone.  *Id.*  They agree again that the Howard N. Eavenson Deed conveyed an easement.  *Id.*

Finally, Plaintiff Edd Ousley brings a claim over parcel 024-00-00-001.00.  *Id.* at 21.  The parties dispute the source deeds from L.M. Johnson, Sarah Jane Ousley, and Susie Hale.  *Id.*  They agree that Howard N. Eavenson and Edgar Hale conveyed easements to the Railroad.  *Id.*

---

[2]   Plaintiffs Bill and Demetra Francis voluntarily dismissed their claim related to parcel 016-00-00-033.02.  Second Stipulation at 1.

[3]   After discovery on the title questions, Plaintiff BMD Enterprises voluntarily dismissed its claim related to parcel number 016-00-00-018.05.  Second Stipulation at 1.

[4]   Plaintiff Mildred Whitaker also brings a claim for parcel 024-00-00-018.00.  Second Stipulation at 5.  The parties have stipulated that the source conveyance instruments for that parcel conveyed only an easement to the Railroad.  *Id.*; Def. Mot. at 17.

The parties ask this Court to resolve the disputed deeds.  The disputed deeds are, in relevant part, described below.  Their corresponding deed book and page numbers accompany the deed name.

### 1.    The Susie Hale Deed (115-639)

The Susie Hale Deed conveyed an interest to the Railroad on January 24, 1941, for one dollar consideration.  Pls.' Mot. Ex. D, ECF No. 48-4.  The Susie Hale Deed applies to railroad corridor segments adjacent to Plaintiff Randy Allen's parcel, Plaintiff BMD Enterprises, LLC's ("BMD") parcel 016-00-00-033.00, and Plaintiff Edd Ousley's parcel.  Second Stipulation 2-4.  The deed describes a strip of uniform width and refers to a blueprint study.  Pls.' Mot. Ex. D.  Notably, the deed conveys lands for the "operation and maintenance of a railroad and its appurtenances thereon, and that in the event of the abandonment of such use, said land shall revert to the grantors, their heirs and assigns."  *Id.*

### 2.    The Harmison Slone Deed (116-128)

On April 8, 1941, the Harmison Slone Deed conveyed an interest to the Railroad.  Pls.' Mot. Ex. E, ECF No. 48-5.  The Harmison Slone Deed applies to railroad corridor segments adjacent to each of Plaintiff Bill and Demetra Francis's parcels (016-00-00-031.0, 016-00-00-031.02, and 016-00-00-031.01) and BMD parcel 016-00-00-029.00.  Second Stipulation at 3.  This deed conveyed the land parcels for "One Dollar and other good and valuable consideration."  Pls.' Mot. Ex. D.  It further states that the parties "have bargained, sold, granted and conveyed" the parcels "with covenant of general warranty."  *Id.*  The deed describes a strip of uniform width "through located center line of the Middle Creek Line."  *Id.*; Pls.' Mot. Ex. W, ECF 48-23.

### 3.    The First Allen Slone Deed (116-128)

The Allen Slone Deed (the "First Allen Slone Deed") conveyed an interest to the Railroad on April 9, 1941.  Pls.' Mot. Ex. F, ECF No. 48-6.  It applies to railroad corridor segments adjacent to each of Plaintiff Bill and Demetra Francis's parcels and BMD's parcel 016-00-00-029.00.  Second Stipulation at 3–4.  The First Allen Slone Deed provides the land in exchange for one dollar and other consideration.  Pls.' Mot. Ex. F.  The Railroad received the property "together with the privileges and appurtenances thereunto belonging, unto the [Railroad], its successors and assigns forever."  *Id.*  The deed describes a strip of uniform width.  *Id.*  On March 5, 1941—approximately one month before this deed was executed—there was a condemnation judgment related to this same strip of land.  Pls.' Mot. Ex. AA, ECF No. 48-27.  Allen Slone is not mentioned in the condemnation proceeding, and it involved his co-tenants.  *See id.*  This proceeding awarded $1,490.00 for the land.  *Id.*

### 4.    The Charles Slone (115-399) and Second Allen Slone Deeds (116-126)

Allen Slone held a life estate in this property while Charles Slone held the remainder.  Pls.' Mot. Ex. AA.  These deeds conveyed an interest to the Railroad in 1941.  Pls.' Mot. Ex. G, ECF No. 48-7; Pls.' Mot. Ex. H, ECF No. 48-8.  They apply to railroad corridor segments

4

adjacent to Bill and Demetra Francis's parcel 016-00-00-031.01 and BMD's parcel 16-00-00-029.00.  Second Stipulation at 2–4.

The Allen Slone Quit Claim Deed from Allen Slone to the C&O Railroad ("Second Allen Slone Deed") conveyed the grantor's life estate interest to the Railroad.  Pls.' Mot. Ex. H, ECF No. 48-8.  For one dollar and other consideration, the deed conveys to the Railroad, "its successors and assigns, forever, that certain parcel of real estate . . . fully described in the certain deed dated January 9th, 1941, from Charles Sloan and wife."  *Id.*  As with the First Allen Slone Deed, this deed references the parcel description in the Sloan condemnation judgment.  Pls.' Mot. Ex. AA.

The Charles Slone deed provides that for "consideration of the sum of Five Hundred Dollars ($500.00) . . . the parties of the first part do bargain, grant, sell and convey unto the parties of the second part, its successors and assigns, forever, the following described real estate."  Pls.' Mot. Ex. G.  The deed describes a parcel of uniform width "through [the] located center line of the Middle Creek line" in mountainous country.  *Id.*; Pls.' Mot. Ex. U, ECF No. 48-21; Pls.' Mot. Ex. B, ECF No. 48-2.

### 5.    The Riley Prater Deed (115-361)

The Riley Prater Deed conveyed an interest to the Railroad on January 22, 1941.  Pls.' Mot. Ex. I, ECF No. 48-9.  This deed applies to railroad corridor segments adjacent to Bill and Demetra Francis's parcel 016-00-00-031.01 and BMD's parcel 016-00-00-033.00.  Second Stipulation 2–4.  The deed provides that, for one dollar  and other consideration, the land transferred to the Railroad "with covenant of general warranty of title."  Pls.' Mot. Ex. I.  This source deed describes a parcel of uniform width "through [the] located center line of the Middle Creek Line," in mountainous country.  Pls.' Mot. Ex. I; Pls.' Mot. Ex. W.

### 6.    The Robie Johnson (124-625), Roxie Justice (124-623), and Avanella Hale (124-624) Quit Claim Deeds

The Robie Johnson (Pls.' Mot. Ex. J, ECF No. 48-10), Roxie Justice (Pls.' Mot. Ex. K, ECF No. 48-11), and Avanella Hale Quit Claim Deeds (Pls.' Mot. Ex. L, ECF No. 48-12) conveyed an interest to the Railroad on September 25, 1944, January 4, 1945, and December 30, 1944, respectively.  These deeds contain identical language and apply to railroad corridor segments adjacent to Plaintiff Myrtle Johnson's two parcels.  Second Stipulation at 5–6.  The deeds state that the individuals "do hereby remise, release, quitclaim, convey and confirm unto the said The Chesapeake & Ohio Railway Company . . . all their right, title and interest in" the parcels of land.  Pls.' Mot. Ex. J; Pls.' Mot. Ex. K; Pls.' Mot. Ex. L.  The parties provided consideration of one dollar and other undefined goods.  *Id.*  These deeds identify a parcel of uniform width from the "located center line."  *Id.*  The description follows the center line from the surveyed and located road.  *Id.*

### 7.    The Willard Ratliff Deed (131-560)

On July 3, 1946, the Willard Ratliff Deed conveyed an interest from Willard Ratliff and Ruth Ratliff to the C&O Railroad.  Pls.' Mot. Ex. M, ECF No. 48-13.  This deed applies to

railroad corridor segments adjacent to both of Plaintiff Myrtle Johnson's parcels. Pls.' Mot. at 19–20. In exchange for consideration of $100, the Willard Ratliff Deed conveyed "all their undivided right, title, and interest in" the land "with covenant of general warranty of title." Pls.' Mot. Ex. M. The deed describes a piece of land through a center line. *Id.*

### 8.    The Avanelle Johnson Deed (125-214)

The Avanelle Johnson Deed conveyed an interest from "Avanell[e] Johnson, Committee for Willie Johnson, an insane person," to the Railroad on January 3, 1945. Pls.' Mot. Ex. N, ECF No. 48-14. This deed applies to railroad corridor segments adjacent to both of Plaintiff Myrtle Johnson's parcels. Second Stipulation at 5. It provides that, in exchange for $200 consideration, Avanelle Johnson "remises, releases, quitclaims, conveys, and confirms" to the Railroad "all of the right, title and interest, being an undivided one-eighth (1/8) interest of Willie Johnson in and to the . . . described strip or parcel of land." Def.'s Mot. Ex. Q. The deed further states that this property is conveyed "with covenant of general warranty of title." *Id.* The description follows the center line from the surveyed and located road. *Id.*

### 9.    The L.M. Johnson Deed (115-342), the Sarah Jane Ousley Deed (115-407),  the Daisy Hale Howard Deed (115-395), the Oscar Slone Deed (115-327), and the Lewis Slone Deed (115-334)

The L.M. Johnson (Pls.' Mot. Ex. O, ECF No. 48-15), Sarah Jane Ousley (Pls.' Mot. Ex. P, ECF No. 48-16), Daisy Hale Howard (Pls.' Mot. Ex. Q, ECF No. 48-17), Oscar Slone (Pls.' Mot. Ex. R, ECF No. 48-18), and Lewis Slone (Pls.' Mot. Ex. S, ECF No. 48-19) warranty deeds all contain identical language, other than the consideration paid. The L.M. Johnson warranty deed applies to the railroad corridor segments adjacent to Plaintiff Mildred Whitaker and Plaintiff Edd Ousley's parcels. Second Stipulation at 5–7. The Sarah Jane Ousley warranty deed applies to the railroad corridor segments adjacent to Plaintiff Edd Ousley's parcel. *Id.* The Daisy Hale Howard warranty applies to the railroad corridor segments adjacent to Plaintiff Joseph Slone's parcel. *Id.* The Oscar Slone warranty deed applies to the railroad corridor segments adjacent to Plaintiff Joseph Slone's parcel. *Id.* The Lewis Slone warranty applies to the railroad corridor segments adjacent to Plaintiff Joseph Slone's parcel. *Id.*

The consideration provided varied, but the parties granted the Railroad, "its successors and assigns forever," the parcel of land "with covenant of general warranty of title." Pls.' Mot. Exs. O–S, ECF Nos. 48-15 to 48-19. Each of these source deeds describe a parcel of uniform width "through located center line." *Id.* The description follows the center line from the surveyed land, and the land is in mountainous country. Pls.' Mot. Ex. W.

## II.    Procedural Posture

On May 13, 2021, Plaintiffs filed their Complaint; an Amended Complaint followed on September 15, 2021. Compl., ECF No. 1; Am. Compl. The parties' September 9, 2021 Joint Preliminary Status Report asked the Court to divide the proceedings into a title determination phase followed by a liability and just compensation phase. ECF No. 9. The Court granted that request. ECF No. 10.

After discovery limited to the title questions, Plaintiffs dismissed their claims regarding BMD's parcel 016-00-00-018.05, and Bill and Demetra Francis's parcel 016-00-00-033-02. Second Stipulation at 1. The parties stipulated that each Plaintiff has at least some interest in the land in controversy. *See* First Stipulation; Second Stipulation; Third Stipulation. Seventeen source conveyance instruments remain in dispute. Third Stipulation.

On April 26, 2023, the Government filed a Corrected Motion for Partial Summary Judgment. Def.'s Mot. Plaintiffs filed their Cross-Motion for Partial Summary Judgment and Response to the Government's Motion on May 22, 2023. Pls.' Mot. They later filed a Motion to Strike regarding four documents produced by the Government in its Motion for Partial Summary Judgment. Mot. to Strike, ECF No. 49. The parties filed their respective responses and replies to these three motions, and briefing concluded on July 21, 2023. *See* ECF Nos. 53, 54, and 57.

## III.    Jurisdiction

Subject matter jurisdiction is a threshold matter which must be established before addressing the merits of any case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). The Tucker Act grants the Court jurisdiction over this Fifth Amendment takings case because it is a claim "founded upon the Constitution" and satisfies the money-mandating provision requirement. *Preseault v. Interstate Com. Comm'n (Preseault I)*, 494 U.S. 1, 12 (1990) (quoting *United States v. Causby*, 328 U.S. 256, 267 (1946)); *see Whispell Foreign Cars, Inc. v. United States*, 100 Fed. Cl. 529, 536 (2011) ("In a takings case, the money-mandating provision is the Fifth Amendment to the Constitution."). It is well-established that the issuance of an NITU pursuant to 16 U.S.C. § 1247(d) and 49 C.F.R. § 1152.29(d) may give rise to a compensable taking. *Preseault I*, 494 U.S. at 13–14. Accordingly, the Court has subject-matter jurisdiction.

## IV.    Motion to Strike

### A.    Legal Standard

A party moving for summary judgment before the Court of Federal Claims may submit evidence to support its assertion that there is no genuine dispute of material fact. RCFC 56(c)(1). The opposing party can then object to the admission of that proffered evidence, and the court should strike it if it deems it inadmissible. *See* RCFC 56(c)(2).

### B.    Discussion

Plaintiffs move to strike as inadmissible four cover letters. Mot. to Strike at 1. The letters at issue are 1) the C&O Railroad Cover Letter to the Harmison Slone Deed (the "Harmison Slone Letter"), ECF No. 44-24; 2) the C&O Railroad Cover Letter to the First Allen Slone Deed (the "Allen Slone Letter"), ECF No. 44-25; 3) the C&O Railroad Cover Letter to Avanelle Johnson Deed (the "Avanelle Johnson Letter"), ECF No. 44-26; and 4) the C&O Railroad Cover Letter to the Charles Slone Deed (the "Charles Slone Letter"), ECF No. 44-1. Mot. to Strike at 1. Plaintiffs raise evidentiary objections to these letters. *Id.* at 2 ("The Letters should be stricken as lacking personal knowledge, containing inadmissible legal conclusions, and failing to establish the signatory's competence."), 3 ("The signatory to the Letters does not

qualify as a lay witness, and all testimony of the signatory should be stricken."), 4 ("The Letters do not qualify as expert testimony and should be stricken."), and 5 ("The Letters should be stricken as inadmissible hearsay.").  For the following reasons, the Court denies Plaintiffs' Motion to Strike.

First, the Government cured any concern regarding the letters' authenticity in its Response.  To explain the letters' origin, the Government provided Elizabeth Harper's Declaration.  Ms. Harper is a Senior Real Estate Supervisor for CSX Transportation.  *See* Resp. to Mot. to Strike Ex. B, ECF No. 53-2.  This declaration satisfies RCFC 56(c)(4)'s requirement that a "declaration used to support or oppose a motion [] be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  RCFC 56(c)(4).  The declaration further gives credence to the letters' authenticity.  Ms. Harper certifies that she is the custodian of the CSXT property records regarding Middle Creek Line and the letters "have always been stored in the custodian file with the source deeds from the time of receipt by the C&O Railway in the 1940s, to date.  They have not been altered or amended in any way, shape, or form."  *Id.* at 2.

Having met the threshold question for authenticity, the Court considers whether the letters contain inadmissible evidence.  They do not.  All parties agree that if these letters are authentic, they are admissible.  Mot. to Strike at 6; Resp. to Mot. to Strike at 6.  In sum, the letters accompanied, and provide brief details and context for, the respective deeds.  Each letter is signed and dated.  Because there is no reason to question the authenticity of these documents, they are admissible under the "ancient documents" exception to the rule against hearsay.  FED. R. EVID. 803(16).

To the extent that statements within the documents contain legal conclusions, that alone is not a basis for striking the evidence.  Nor do Plaintiffs provide authority to suggest otherwise.  In weighing the probative value of the evidence against the danger that it may confuse the issues or create unfair prejudice, FED. R. EVID. 403, this Court finds that the documents' probative value outweighs any potential prejudice.  These letters have substantial probative value as they will aid the Court in thoroughly reviewing the land ownership.  *See Global Computer Enter's, Inc. v. United States*, 88 Fed. Cl. 52, 71–72 (2009).

Further lending weight to their probative value, Plaintiffs themselves materially relied upon these letters to identify the applicable source deeds used to acquire the parcels and the property interests therein.  Resp. to Mot. to Strike at 7.  The Government asserts that "[t]he only evidence the parties presently have which speaks to the nature and/or percentage of the property interest held by the original grantors are the C&O Railroad Letters."  *Id.*  It also points out that Plaintiffs "substantively rely on the information pertaining to the fractional ownership contained within these C&O Letters" to determine co-tenancy.  *Id.* at 9.  The Court agrees.  Finally, while Plaintiffs are correct that these letters do not qualify as either opinion or expert testimony, this is irrelevant.  The letters are documents not prepared or offered by a lay or expert witness.  Therefore, the rules of evidence regarding lay and expert testimony are inapplicable.  *See* FED. R. EVID. 701, 702.

V.   **Cross-Motions for Summary Judgment**

   A.  **Legal Standard**

   Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  RCFC 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine if a reasonable fact finder could rule either way on it.  *Id.* at 250.  When resolving cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  *Abbey v. United States*, 99 Fed. Cl. 430, 436 (2011) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

   B.  **Discussion**

   The Federal Circuit has established the framework to consider Fifth Amendment takings claims brought under the Trails Act.  *See Preseault v. United States (Preseault II)*, 100 F.3d at 1525, 1529 (Fed. Cir. 1996).  The Court must first determine title ownership, "specifically whether the railroad acquired only an easement or obtained a fee simple estate."  *Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1373 (Fed. Cir. 2009).  If the Railroad fully acquired the property rights through a fee title, the party seeking compensation has no claim to the land.  *Id.*  Only parties with property interests at the time of the taking are entitled to compensation.  *See Am. Pelagic Fishing Co., L.P. v. United States*, 379 F.3d 1363, 1372 (Fed. Cir. 2004).  Here, to establish a compensable property interest, Plaintiffs must demonstrate that the Railroad originally only acquired an easement.  *See Rogers v. United States*, 107 Fed. Cl. 387, 393–94 (2012).  "An easement is a 'nonpossessory right to enter and use land in the possession of another.'"  *Marvin M. Brandt Revocable Trust v. United States*, 572 U.S. 93, 105 (2014) (quoting Restatement (Third) of Property: Servitudes § 1.2(1) (1998)).  However, if the Railroad initially obtained fee simple title, Plaintiffs "today would have no right or interest in those parcels."  *Preseault II*, 100 F.3d at 1533.  The parties' motions are limited to this threshold property rights issue.

   Because property interests are created by state law, whether the source deeds conveyed an easement or a fee simple estate is determined by state law.  *See id.* at 1543 (applying Vermont law in a comparable case to determine if the deeds conveyed an easement); *see also Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  Where the legal issue concerns the abandonment of a railroad right of way, the STB's plenary jurisdiction to regulate abandonments preempts the state law.  *See Barclay v. United States*, 443 F.3d, 1368, 1374 (Fed. Cir. 2006).  However, courts consider the parties' underlying property rights under applicable state law.  *See Rogers v. United States*, 814 F.3d 1299, 1305 (citing *Preseault II*, 100 F.3d at 1525).  Here, Kentucky law applies.

   Kentucky law dictates that "the four corners of the deed should be looked to in order to ascertain the grantors' intention and purpose, and all legitimate provisions contained therein will be given effect."  *Gabbard v. Short*, 351 S.W.2d 510, 511 (Ky. 1961).  "[T]he test is that of

intention, which is to be gathered from the context of the instrument." *Sherman v. Petroleum Exploration*, 132 S.W.2d 768, 770–71 (Ky. 1939).

Courts consider several factors to determine property owners' intentions and, therefore, property interests. Generally, Kentucky law finds easements when deeds include: 1) nominal consideration; 2) a description of uniform width; and 3) reference a survey of the road. *See Gabbard*, 351 S.W.2d at 511; *Laurel Cnty v. Howard*, 224 S.W. 762, 763 (Ky. 1920). Conversely, a deed conveying a fee simple typically includes 1) a habendum clause—a clause found in deeds starting with the phrase "to have and to hold"—containing covenants of general warranty; 2) an exchange of appreciable consideration; and 3) a parcel of irregularly shaped land. *Ill Cent. R. Co. v. Roberts*, 928 S.W.2d 822, 825 (Ky. Ct. App. 1996); *Barton v. Jarvis*, 291 S.W. 38, 39 (Ky. 1927); *Sherman*, 132 S.W.2d at 771; *Bodine's Adm'r v. Arthur*, 14 S.W. 904, 904–05 (Ky. 1890). These factors are not exhaustive, nor is any single factor dispositive. *See Sherman*, 132 S.W.2d at 772 (finding that a deed containing a habendum clause granting covenant of general warranty—a factor typically indicating a fee simple—conveyed an easement to the railroad). "The construction of a deed . . . must be governed by the intention of the parties, and this intention must be gathered from the instrument as a whole." *Williams v. Williams*, 259 S.W.2d 53, 53–54 (Ky. 1953).

The Government does not deny that Plaintiffs Lonnie Fleenor and Rita Fleenor, Wilma L. Goble, and Jenny Porter have property interests. First Stipulation. However, the Government disputes, in part, the ownership interests of seven other Plaintiffs, who collectively claim ownership of thirty-eight land parcels. The Court finds that only one of the remaining deeds at issue—the Susie Hale Deed—conveyed an easement, and the remaining deeds conveyed a fee simple to the Railroad. Though each deed is analyzed independently, they share many similarities. While there are factors that weigh in favor of each party's position for the deeds, most of the source conveyance instruments do not convey an easement to the Railroad. Notably, the Susie Hale Deed differs from the others in that its conveyance specifically prescribes how the land may be used. Plaintiffs do not meet their burden of demonstrating an ownership interest in the other parcels. *See Cienega Gardens v. United States*, 331 F.3d 1319, 1328 (Fed. Cir. 2003). The specific findings regarding each deed are as follows.

### 1.    Susie Hale Deed

The first disputed deed is the Susie Hale Deed. This deed conveyed an interest to the Railroad on January 24, 1941, for one dollar consideration. Pls.' Mot. Ex. D. The deed applies to railroad corridor segments adjacent to Plaintiff Randy Allen's parcel, Plaintiff BMD Enterprises' parcel 016-00-00-033.00, and Plaintiff Edd Ousley's parcel. Second Stipulation at 2–4. It clearly states that the Railroad is acquiring the land "for the construction, operation and maintenance of a railroad and its appurtenances thereon." Pls.' Mot. Ex. D. This plain language, along with the nominal consideration and the geography of the land, require a finding that the Susie Hale Deed conveyed only an easement to the Railroad.

The deed describes a land strip of uniform width and refers to a blueprint study.  *Id.*  It contains the language:

> It is understood and agreed that the hereinbefore described property is acquired by the party of the second part for the construction, operation and maintenance of a railroad and its appurtenances thereon, and that in the event of the abandonment of such use, said land shall revert to the grantors, their heirs and assigns. . . .

> TO HAVE AND TO HOLD said above described property, together with the privileges and appurtenances thereunto belonging, unto the party of the second part, its successors and assigns, forever, for railroad purposes only, and if same is ever abandoned for such uses, said property shall revert to the grantors, their heirs and assigned; and parties of the first party covenant to warrant the title generally.

Pls.' Mot. Ex. D.

The deed lacks language explicitly conditioning the grant to a "right of way" and contains the phrase "its successors and assigns, forever."  However, in the context of a deed to a railroad, the language of "successor and assigns, forever" is not dispositive when several additional factors suggest the grantor's intent to convey an easement.  *See Sherman*, 132 S.W.2d at 770 (holding that a deed conveyed an easement, despite containing the language "unto the party of the second part and its successors and assigns forever, with covenant of general warranty of title"); *Mammoth Cave Nat'l Park Ass'n v. State Highway Comm'n*, 88 S.W.2d 931 (Ky. 1935) (holding the deed conveyed an easement despite the phrase "forever, in fee simple").

The deed describes a uniform strip of land, as is common for a railroad right of way, and refers to the Railroad's blueprint.  Pls.' Mot. Ex. D.  It explicitly conditions the conveyance to the right to build a railroad, which evidences the grantor's intent to convey an easement.  *Id.*  This condition suggests that the grantors' intention was to convey a railroad easement.  *See Sherman*, 132 S.W.2d at 771 ("We have here a strip of uniform width across a body of land, conveyed specifically, for the right of way for a railroad which had been surveyed.").  This language strongly indicates the grantor conveyed the property for a limited purpose—that is, to build and maintain a railroad.  Lastly, the property interest was conveyed for only nominal consideration (one dollar), which is further indication of an easement.  *See Callahan v. Hensley*, No. 2022-CA-0157-MR, 2023 WL 2718959, at *2 (Ky. Ct. App. Mar. 31, 2023).  In combination, these factors demonstrate that the grantor intended to convey an easement to the Railroad.

Finally, Kentucky passed a statute abolishing the estate formerly known as "fee simple determinable with possibility of reverter."  *See* KY. REV. STAT. § 381.218 (1960).  While the parties address the potential problem with the reverter provision in the Susie Hale Deed, the statue only applies to fee simple determinable estates that contain a reverter clause.  Because the Court finds the deed conveyed an easement, this is moot.

### 2.   Harmison Slone Deed

The Harmison Slone Deed applies to railroad corridor segments adjacent to Plaintiff Bill and Demetra Francis's parcels and BMD's parcel 016-00-00-029.00.  *See* Second Stipulation at 3.  The deed's language indicates that the owner intended to convey a fee simple title, and Plaintiffs did not otherwise establish an ownership interest.

The deed states:

> That for and in consideration of the sum of One Dollar and other good and valuable consideration well and truly paid by party of the second part to parties of the first part, receipt whereof is hereby acknowledged, the said parties of the first part have bargained, sold, granted and conveyed and by these presents do bargain, sell, grant, and convey unto the party of the second part the following strip or parcel of land . . . . TO HAVE AND TO HOLD unto said party of the second part, its successors and assigns, with covenant of general warranty.

Pls.' Mot. Ex. E.

Based on Kentucky law and the four corners of this deed, the Harmison Slone Deed conveys a fee simple to the Railroad.  First, this deed conveys a strip of land—not just a right to use the land.  The land descriptions are "by metes and bounds."  *Gabbard*, 351 S.W.2d at 511. Its "habendum clause contains covenants of general warranty," a factor weighing in favor of finding this is a fee simple.  *Id.*

Here, the land was conveyed for "the sum of One Dollar and other good and valuable consideration."  Pls.' Mot. Ex. E.  Although the consideration could be indicative of an easement, that is insufficient to overcome the other deed provisions: "[w]hen a conveyance is voluntary and absolute on its face, the question of consideration is immaterial."  *Murphy v. Saalwaechter*, No. 2012-CA-000534-MR, 2013 WL 3808019, at *6–7 (Ky. Ct. App. 2013). Notably, this deed lacks any language indicating that the grantor conveyed the land for a "right of way" or for specific railroad usage.  *See Rollins v. Van Jellico Mining Co.*, 238 S.W. 193, 194 (Ky. 1922) (holding that a deed should not be interpreted to convey an easement if there is no "restriction whatsoever upon the use thereof by the grantee").  This factor is compelling.

When viewed as a whole, the deed conveys a fee simple to the Railroad.  The Harmison Slone Deed Cover Letter provides additional evidence that the deed conveys a fee simple to the Railroad. The cover letter states that this is a "General Warranty Deed" to the Railroad.  Def.'s Mot. Ex. X.  As such, it appears clear from both the four corners of the deed and the cover letter that the grantor intended to convey a fee simple estate to the Railroad.  Therefore, Plaintiffs Bill and Demetra Francis and BMD Enterprises do not have a property interest in the parcels conveyed by the Harmison Slone Deed.

Plaintiffs argue that a co-tenant cannot convey a fee simple interest without the other co-tenants joining them.  This argument is repeated throughout their pleadings related to numerous deeds, including this one.  However, when a co-tenant conveys their interest by "metes and bounds," the interest is subject to the rights of co-tenants, meaning it cannot divest a co-tenant of

their property. *See Potter v. Wallace*, 215 S.W. 538, 542 (Ky. 1919). This limitation does not result in a void sale. *Wiser Oil Co. v. Sizemore*, No. 2000-CA-002433-MR, 2004 WL 1176297, at *2 (Ky. Ct. App. May 28, 2004). The acquired interest is completely enforceable against the grantor, but only enforceable against the non-consenting co-tenants to the extent that it does not injure their property interests. *Saulsberry v. Saulsberry*, 121 F.2d 318, 321 (6th Cir. 1941). Each tenant has a right to enter and use the entirety of the land. *Id.*; *Johnson v. Env't & Pub. Prot. Cabinet*, 289 S.W.3d 216, 219 (Ky. Ct. App. 2009), *as modified* (May 29, 2009) ("Each co[-]tenant, regardless of the size of his fractional share of the property, has a right to possess the whole.").

Plaintiffs argue that if one co-tenant conveyed an easement, then another could not convey a fee simple. However, this argument is contrary to Kentucky law, which dictates that the "deed creates equities in favor of the grantee, and he will be protected to the extent that it can be done without injury to the tenants in common who are not parties to the deed." *Potter*, 215 S.W. at 544. There appears to be no such injury here. Thus, when the Railroad obtained a fee simple from one co-tenant, it became a co-tenant with the others.

### 3. First Allen Slone Deed

The First Allen Slone Deed conveyed an interest to the Railroad and implicates railroad corridor segments adjacent to each of Plaintiff Bill and Demetra Francis's parcels and BMD's parcel 016-00-00-029.00. Both the deed's language and the cover letter accompanying it establish that the deed conveyed a fee simple interest.

The deed states in relevant part:

> [I]n consideration of the sum of One Dollar, cash in hand paid, and other good and valuable considerations, receipt of all of which is hereby acknowledged, the party of the first part, by these presents, does quitclaim, release, convey and confirm unto the party of the second part, its successors and assigns forever, that certain parcel of real estate, situated on Left Fork of Middle Creek, in Floyd County, Kentucky, and fully described in that certain judgment rendered by the Floyd County Court on the 5 of March, 1941, in the action of The Chesapeake & Ohio Railway Company against Harmison Slone and others and recorded in Order Book 35, page 222, Floyd County Court Records.
>
> TO HAVE AND TO HOLD said above described property, together with the privileges and appurtenances thereunto belonging, unto the said party of the second part, its successors and assigns forever.

Pls.' Mot. Ex. F. The deed describes a strip of uniform width. *Id.*

Beyond the plain language of the deed, when taken in totality, the First Allen Slone Deed conveyed a fee title to the Railroad. This deed contains no right of way or conditional language limiting the use of the land. The deed also contains a "quitclaim" provision. A "quitclaim" deed formally releases the grantor's claim or right to the land. *See* Quitclaim Deed, Black's Law Dictionary (11th ed. 2019). Kentucky law adopted this interpretation for such deeds. *See*

*Arnett v. Stephens*, 251 S.W. 947, 951–52 (Ky. 1923); *Abbott, Inc. v. Guirguis*, 626 S.W.3d 475, 479 (Ky. 2021) (noting that a quitclaim deed conveyed the grantors' interest in the land).  By including this "quitclaim" provision in the deed, the grantor intended to fully convey his property interest to the Railroad.

Additionally, the deed contains a provision conveying the land to the Railroad, "its successors and assigns forever."  Pls.' Mot. Ex. F.  Similar cases suggest that the presence of this phrase and lack of "right of way" language means the grantor did not convey an easement.  *Fuqua v. United States*, 869 F.Supp. 2d 814, 825–26 (W.D. Ky. 2012); *Rollins*, 238 S.W. at 193.

In addition, the cover letter accompanying the deed further suggests the grantor did not intend to convey an easement.  First, the letter labels this a "Quit Claim Deed" from Allen Slone to the Chesapeake and Ohio Railway Company.  Pls.' Mot. Ex. Y.  Second, the letter states that the land at issue "was apparently taken in connection with the acquisition of property described in [the] condemnation suit."  *Id.*  Though Kentucky law dictates that land granted to a railroad by condemnation proceedings is an easement, the question here is whether a co-tenant is affected by another's condemnation proceeding involving the same plot of land.  *See Rose v. Bryant*, 251 S.W.2d 860, 861 (Ky. 1952).  The parties agree that this parcel of land was the subject of a condemnation judgment from March 5, 1941.  Pls.' Mot. Ex. I; Pls.' Mot. Ex. AA; Def.'s Resp. at 17.  However, there is no evidence to suggest that Allen Slone was a defendant in that proceeding.  *Id.*  His co-tenants were.  Had he been a party to that case, *Rose* would control, and the Railroad would have only obtained an easement.

The fact that the cover letter indicates the land "was apparently taken" in relation to the condemnation proceeding is insufficient evidence that the Railroad obtained Allen Slone's ownership interests in the condemnation proceedings.  Furthermore, the First Allen Slone Deed is dated April 9, 1941—after the condemnation proceedings in March 1941.  Pls.' Mot. Ex. I.  If Allen Slone had lost his property interests in the condemnation proceedings, it would be nonsensical for him to later sign this deed.  Thus, the factual record demonstrates that the Allen Slone Deed conveyed a fee simple to the Railroad.

### 4.    Charles Slone Deed and Second Allen Slone Deed

The Charles Slone Deed and the Second Allen Slone Deed involve Allen Slone's life estate in the land and the remainder held by Charles Slone.  Based upon factors including the presence of a "quitclaim" provision, consideration, and lack of right of way language, the deeds convey fee simple title to the Railroad.

First, the Allen Slone Deed from Allen Slone to the C&O Railroad ("Second Allen Slone Deed"), conveyed the grantor's life estate interest to the Railroad. The deed provides:

> That for and in consideration of the sum of One ($1.00) Dollar, cash in hand paid, and other good and valuable considerations, receipt of all of which is hereby acknowledged, the party of the first part, by these presents, does quitclaim, release, convey and confirm unto the party of the second part, its successors and assigns, forever, that certain parcel of real estate, situated on Left Fork, in Floyd County,

Kentucky, and fully described in that certain deed dated January 9th, 1941, from Charles Slone and wife to The Chesapeake and Ohio Railway Company, recorded in Deed Book 115, page 399. . . . TO HAVE AND TO HOLD said above described property, together with the privileges and appurtenances thereunto belonging, unto the said party of the second part, its successors and assigns, forever.

Pls.' Mot. Ex. H, ECF No. 48-8.  The deed relates to the same land as the Charles Slone Deed, which describes a parcel of uniform width "through located center line of the Middle Creek Line" and is in mountainous country.  Pls.' Mot. Ex. G.

Although this deed provided nominal consideration for the property, the deed's otherwise unambiguous language requires a finding that this land conveyed fee title.  Once again, the presence of "quitclaim" is a strong indicator of the grantor's intent to convey all the "rights, title and interest" he held.  *Arnett*, 251 S.W. at 951–52; *see supra* Part V, Section B(3).  There are also no limitations on the land, nor are there any right of way conditions.  The warranties contained in this deed are typical of a fee estate.  *See Barton*, 291 S.W. at 39.  Thus, when taken in totality, the deed's language indicates the grantor intended to convey fee title to the Railroad.

Next, the Charles Slone Deed states:

That for and in consideration of the sum of Five Hundred Dollars $500.00, cash in hand paid, receipt of which is hereby acknowledged the parties of the first part have bargained and sold, and by these presents do bargain, grant, sell and convey unto the party of the second part, its successors and assigns, forever, the following described real estate, that certain parcel of real estate situated on Left Fork, in Floyd County, Kentucky . . . .

Being a part of the same property conveyed to the grantor, Charles Slone by Allen Slone, et al, by deed dated February 24, 1921, recorded in Deed Book 70, page 179, Floyd County Court Records.

TO HAVE AND TO HOLD said above described property, together with the privileges and appurtenances thereunto belonging, unto the said party of the second part, its successors and assigns, forever, with covenant of general warranty of title.

Pls.' Mot. Ex. G.  This deed conveys "real estate" and a covenant of general warranty.  These factors are indicative of an intent to convey a fee title.  The consideration here is more substantial than the nominal consideration typically seen in easement conveyances.  Furthermore, there is no "right of way" language in this deed.  *Gabbard*, 351 S.W.2d at 511.  On the four corners of the deed, the grantor conveyed a fee title.

Plaintiffs assert that the property is the same that was at issue in their condemnation proceeding involving the First Allen Slone Deed.  Pls.' Mot. at 29.  The Government disagrees, noting that these two deeds relate to "an area of 2.00 acres," whereas the condemnation proceedings dealt with a "5.74 acre parcel."  Def.'s Resp. at 21; *see* Pls.' Mot. Ex. AA.  Plaintiffs offers no rebuttal.  Pls.' Reply, ECF No. 54.  And with no evidence to the contrary, Plaintiffs have not sufficiently proven their assertion.  Thus, the property at issue in these deeds does not

appear to be the same as that conveyed in the First Allen Slone Deed.  *See Abbey*, 99 Fed. Cl. at 430.  Therefore, the condemnation judgment has no bearing on the Charles Slone Deed and Second Allen Slone Deed.

Plaintiffs again assert that because co-tenants conveyed an easement, this should factor into a similar finding for their deeds.  The parties stipulated that the one co-tenant to this property conveyed an easement to the Railroad.  First Stipulation; Second Stipulation.  For the reasons previously outlined, the fact that one tenant conveyed an easement is not indicative that all other co-tenants similarly did so.  *See supra* Part V, Section B(2).  Thus, this argument does not alter the finding that both deeds conveyed fee simple title to the Railroad.

### 5.       Riley Prater Deed

The Riley Prater Deed applies to segments of the corridor adjacent to Bill and Demetra Francis's parcel 016-00-00-031.01 and BMD's parcel 016-00-00-033.00.  Pls.' Mot. Ex. I; Second Stipulation at 3–4.  This deed conveyed a fee simple title to the Railroad, in part due to its habendum clause.

The deed reads, in pertinent part:

> That for and in consideration of the sum of One ($1.00) Dollar [] cash in hand paid, and other good and valuable consideration, receipt of all of which is hereby acknowledged, the parties of the first part have bargained and sold, and by these presents do grant, bargain, sell and convey, unto the party of the second part, its successors and assigns, forever, the following described real estate, to-wit: That certain tract or parcel of land situated on Left Fork, in Floyd County, Kentucky, and bounded and described as follows . . . TO HAVE AND TO HOLD said above described property, together with the privileged and appurtenances thereunto belonging, or in anywise appertaining, unto the party of the second part, its successors and assigns, forever, with covenant of general warranty of title.

Pls.' Mot. Ex. I.

The habendum clause in this deed is nearly identical to the deed in *Sherman*.  132 S.W.2d at 770 ("To have and to hold said strip or parcel of land, together with all the appurtenances thereunto belonging, unto the party of the second part and its successors and assigns forever, with covenant of general warranty of title.").  While this could be "sufficient to embrace a fee with a covenant of general warranty," standing alone it is not determinative.  *Id.* at 771 ("[T]here may be and often is a warranty of title to an easement.").

This source deed describes a uniform strip of land, provides for only nominal consideration, and is in mountainous country.  Pls.' Mot. Ex. I.  These factors weigh in favor of an easement.  *See Sherman*, 132 S.W.2d at 770–71 (finding that the grantor conveyed an easement to a railroad when the land was in mountainous country and of uniform width).  However, unlike *Sherman*, the deed here does not include any reference to the railroad usage or "right of way."  This is a critical difference, particularly when considered in conjunction with the

habendum clause and lack of limitations on the usage.  These factors require a finding that the deed conveyed a fee simple.

### 6.      Robie Johnson, Roxie Justice, and Avanella Hale Deeds

The Robie Johnson, Roxie Justice, and Avanella Hale Deeds conveyed an interest to the Railroad.  These deeds contain identical language and apply to railroad corridor segments adjacent to both of Plaintiff Myrtle Johnson's parcels.  Second Stipulation at 5–6.  Given their identical language, they are analyzed in tandem.  Though they each provided nominal consideration to the Railroad, these deeds also contain "quitclaim" provisions and additional language demonstrating the grantors' intent.  Thus, they each conveyed fee simple title.

The deeds provide:

> That for and in consideration of the sum of One ($1.00) Dollar, cash in hand paid, and other good and valuable considerations, receipt of which is hereby acknowledged, the parties of the first part do hereby remise, release, quitclaim, convey and confirm unto the said The Chesapeake and Ohio Railway Company, party of the second part, *all their right, title and interest in and to the following described strip or parcel of land*, situated on Caney Creek, in Floyd County, Kentucky . . . .  TO HAVE AND TO HOLD the said above described property, together with the privileges and appurtenances thereunto.

Pls.' Mot. Ex. J; Pls.' Mot. Ex. K; Pls.' Mot. Ex. L (emphasis added).  These deeds also describe a parcel of uniform width from the "located center line."  *Id.*

Each of these deeds conveyed a fee simple estate.  As discussed above, the "quitclaim" provision is compelling.  *See supra* Part V, Section B(3); Quitclaim Deed, Black's Law Dictionary (11th ed. 2019); *Arnett*, 251 S.W. at 951–52.  The deed also conveys "all their right, title and interest" in the land to the C&O Railroad.  This language, releasing the entirety of the original landowners' rights in this property, demonstrates that the grantors intended to grant *all* of their interest—not merely *some* interest.  Thus, despite the nominal consideration, the deed's language supports a finding that the interest was transferred through a fee simple title.  *See Murphy*, 2013 WL 3808019, at *6–7.

### 7.      The Willard Ratliff Deed

The Willard Ratliff Deed applies to railroad corridor segments adjacent to both of Plaintiff Myrtle Johnson's parcels.  Def.'s Mot. at 28.  The Court finds that this is another deed "in the usual and customary form of fee-simple deeds."  *Barton*, 291 S.W. at 40.

The Willard Ratliff Deed provides:

> That for an in consideration of the sum of One Hundred Dollars . . . ($100.00) Cash in hand paid, receipt of which is hereby acknowledged, the parties of the first part have bargained and sold, and by these presents do bargain, grant, sell and convey unto the party of the second part, its successors and assigns, forever, the following described real estate, being all their undivided right, title, and interest in and to the

17

following described strip or parcel of land situated on Caney Creek, in Floyd
County, Kentucky . . . TO HAVE AND TO HOLD said above described property,
together with the privileges and appurtenances thereunto belonging, unto the said
party of the second part, its successors and assigns, forever, with covenant of
general warranty of title.

Pls.' Mot. Ex. M.  This deed contains numerous factors indicating the grantor intended to convey
a fee estate to the Railroad.  First, the consideration is not nominal and the deed is in "the usual
and customary form of fee-simple deeds."  *Rollins*, 238 S.W. at 194.  Second, the habendum
clause provides for a covenant of general warranty of title.  *Gabbard*, 351 S.W.2d at 511.
Finally, the lack of conditional language regarding land usage weighs in favor of a fee simple.
*See Sherman*, 132 S.W.2d at 771.  Accordingly, the Court determines the Railroad has fee simple
title.

### 8.    Avanelle Johnson Deed

The Avanelle Johnson Deed conveyed a fee simple estate from Avanelle Johnson,
"Committee for Willie Johnson, an insane person," to the Railroad.  Pls.' Mot. Ex. N, ECF
No. 48-14.  This deed applies to railroad corridor segments adjacent to both of Plaintiff Myrtle
Johnson's parcels.  Second Stipulation at 5.  The plain language of the deed demonstrates that the
grantor intended to convey a fee simple to the Railroad.

The Deed provides:

That for consideration of the sum of Two Hundred Dollars ($200.00) in hand paid,
receipt of which is hereby acknowledged, the party of the first part hereby remises,
releases, quitclaims, conveys, and confirms unto the party of the second part *all of
the right, title and interest*, being an undivided one-eighth (1/8) interest of Willie
Johnson in and to the following described strip or parcel of land, situated on Caney
Fork of Left Middle Creek, Kentucky . . . . TO HAVE AND TO HOLD said above
described property, together with the privileges and appurtenances thereunto
belonging, unto the said party of the second part, its successors and assigns, forever.

Pls.' Mot. Ex. N, ECF No. 48-14 (emphasis added).

As with the L.M. Johnson and related deeds, this deed lacks any language conditioning
the conveyance to railroad use or a right of way.  The consideration paid is not nominal and is
significantly higher than the amount provided in many other deeds.  This instrument makes clear
that "all of the right, title and interest" owned by Willie Johnson is granted to the Railroad.
Though the deed conveyed a strip of land clearly intended for building a railroad line, the
language makes no reference to this purpose.  The plain language of the deed,—including the
"quitclaim provision—combined with significant consideration, indicates that the deed conveyed
a fee simple estate.  *See supra* Part V, Section B(3).

Because this deed unilaterally conveys a co-tenant's interest by metes and bounds, the
Railroad's ownership is not enforceable against other co-tenants who did not sell their interest.
*See Potter*, 215 S.W. at 542.  However, the conveyance is not void and is enforceable against

18

both the tenants who sold their interest and their successors in title. *Wiser Oil Co.*, 2004 WL 1176297, at *2. For this plot of land, the parties have stipulated that Plaintiff has at least some interest stemming from the chains of title for co-tenants who granted the Railroad an easement. Second Stipulation at 5 (stipulating those two deeds connected to Valuation Map Parcel 2 conveyed easements). Thus, Plaintiff and the Railroad are co-tenants to this plot.

> **9.    The L.M. Johnson Deed (115-342), the Sarah Jane Ousley Deed (115-407), the Daisy Hale Howard Deed (115-395), the Oscar Slone Deed (115-327), and Lewis Slone Deed (115-334)**

The L.M. Johnson, Sarah Jane Ousley, Daisy Hale Howard, Oscar Slone, and Lewis Slone warranty deeds all contain identical language, other than the amount of consideration paid. *See* Pls.' Mot. Ex. O; Pls.' Mot. Ex. P; Pls.' Mot. Ex. Q; Pls.' Mot. Ex. R; Pls.' Mot. Ex. S. Each deed conveyed fee simple title to the Railroad.

The L.M. Johnson warranty deed applies to railroad corridor segments adjacent to both of Plaintiff Mildred Whitaker and Plaintiff Edd Ousley's parcels. Second Stipulation at 5–6. The Sarah Jane Ousley warranty deed applies to railroad corridor segments adjacent to Plaintiff Edd Ousley's parcel. *Id.* The Daisy Hale Howard warranty applies to railroad corridor segments adjacent to Plaintiff Joseph Slone's parcel. *Id.* The Oscar Slone warranty deed applies to railroad corridor segments adjacent to Plaintiff Joseph Slone's parcel. *Id.* The Lewis Slone warranty applies to railroad corridor segments adjacent to Plaintiff Joseph Slone's parcel. *Id.* Each of these source deeds describe a parcel of uniform width "through located center line," which follow the center line from the surveyed road. Pls.' Mot. at 35; *see* Pls.' Mot. Exs. O–S.

These deeds provide:

> That for and in consideration for [varying sums] cash in hand paid, receipt of which is hereby acknowledged, the parties of the first part have bargained and sold, and by these presents do bargain, grant, sell and convey unto the party of the second part, its successors and assigns, forever, the following described real estate, those certain parcels of real estate, situated on Left Fork in Floyd, County Kentucky. . . . TO HAVE AND TO HOLD said above described property, together with the privileges and appurtenances thereunto belonging, unto the party of the second part, its successors and assigns, forever, with covenant of general warranty of title.

Pls.' Mot. Exs. O–S.

The deeds do not condition the conveyance to railroad use or a right of way. While Kentucky law favors an easement when interpreting an ambiguous grant to a railroad, an unambiguous deed must be construed as written. *See McMahan v. Hunsinger*, 375 S.W.2d 820, 822 (Ky. 1964) ("We may not substitute what the grantor may have intended to say for the plain import of what he said."). Kentucky law makes clear that deeds to railroads for a strip of land can be interpreted as conveying a fee simple. *See Gabbard*, 351 S.W.2d at 511 (holding that deeds conveyed complete title to a railroad, where the deed contained language typical of fee simple, higher-than-nominal consideration, and no language limiting the grant to railroad right of way). Here, each deed conveys a title to the Railroad's "successors and assigns, forever, with

19

covenant of general warranty of title." Additionally, the consideration ranged from twenty-five dollars to $1,250, higher figures than the nominal one-dollar present in several other deeds. And, even if the twenty-five dollars consideration were deemed nominal, that is insufficient to overcome the other factors present. The deeds' plain language, combined with significant consideration, indicates that they conveyed a fee simple estate.

## VI.    Conclusion

Both parties' cross-motions for summary judgment are **GRANTED-IN-PART** and **DENIED-IN-PART**. As it relates to the Susie Hale Deed, Plaintiffs' Cross-Motion for Summary Judgment is **GRANTED**, and Defendant's Motion for Summary Judgment is **DENIED**. For all other disputed deeds, Plaintiffs' Cross-Motion for Summary Judgment is **DENIED**, and Defendant's Motion for Summary Judgment is **GRANTED**. Additionally, Plaintiffs' Motion to Strike is **DENIED**.

The parties are hereby ordered to submit a Joint Status Report **within 30 days of this Opinion** providing a timeline for discovery and dispositive motions. The parties shall also explore whether settlement is possible at this stage and update the Court on whether they wish to pursue mediation in the Joint Status Report.

**IT IS SO ORDERED.**

 s/ Carolyn N. Lerner
CAROLYN N. LERNER
Judge